Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 7581 | DATE | 05/12/2003 |
| CASE TITLE | Lang v. DCFS | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion for Summary Judgment (doc. # 47);
Defendant's Motion to Strike (doc. #55)

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial [set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] . Enter memorandum opinion and order. For the attached reasons, the Court DENIES Defendant's motion to strike (doc. #55) and GRANTS Defendant's motion for summary judgment (doc. #47), terminating case. All other motions are denied as moot.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAY 1 4 2003 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 59 |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| JHC | courtroom deputy's initials | date mailed notice | |
| | | mailing deputy initials | |
| | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



DOCKETED
MAY 1 4 2003

| | |
|---|---|
| STEVEN LANG, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 00 C 7581 |
| | ) The Honorable William J. Hibbler |
| Illinois Department of Children and Family Services | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Steven Lang alleges that his employer, the Illinois Department of Children and Family Services (DCFS), violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, when it fired him from his job as a child protective investigator. According to Lang, DCS retaliated against him because he previously had filed charges of racial discrimination against the Department. DCFS, on the other hand, states that it terminated Lang because of his excessive, unauthorized absenteeism and it moves for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. DCFS also moves this Court to strike the *pro se* Plaintiff's Local Rule 56.1 statement of facts in its entirety because it fails to conform to the local rules or in the alternative to deem certain paragraphs of its 56.1 statement of facts admitted. For the following reasons, the Court DENIES Defendant's Motion to Strike, GRANTS the Motion to Admit as to those paragraphs of the Defendant's Local Rule 56.1 statement of facts to which the Plaintiff



either failed to reply at all or replied by stating "no comment," and DENIES the motion to admit as to the remaining facts. The Court GRANTS the Defendant's motion for summary judgment.

I. Factual Background[1]

Lang began working for DCFS, an agency in charge of the welfare of children in Illinois, in 1994 as a child welfare specialist. In 1999, after he received several favorable performance evaluations, Lang's supervisors recommended that he be promoted to the position of a child protective investigator. Child protective investigators evaluate and investigate initial referrals to DCFS of alleged physical and sexual abuse. DCFS assigned Lang to a Priority 1 investigative team, which handled cases involving severe neglect and abuse that were considered high risk, and his immediate supervisor was Karen Beckelman. Among other things, Lang's duties required him, and other Priority 1 team members, to meet so-called "mandates," requiring investigators to attempt to

---

[1] Local Rule 56.1 requires a party opposing a motion for summary judgment to provide, among other things, "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b). For the most part, Lang complies with Rule 56.1's directive. In several places, however, Lang responds to DCFS's numbered paragraph with the phrase "no comment." Further, although DCFS's statement of material facts contains 199 numbered paragraphs, Lang responds only to the first 154 paragraphs. Failure to respond by the nonmovant, as mandated by the local rules, results in an admission. *See, e.g., Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 937 (7th Cir. 2003); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Although courts construe liberally the pleadings of *pro se* plaintiffs, *pro se* plaintiffs are not excused from compliance with the procedural rules of the court. *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994). The Court therefore treats as admitted all well-supported facts in DCFS's statement of material facts to which Lang responds "no comment" or to which Lang fails to respond.

locate the endangered child and take steps to take them out of harm's way within 24 hours of receiving notice of the endangered child.

Shortly after completing his training to become a child protective investigator, Lang took a family responsibility leave beginning on December 16, 1999. Lang returned to work on February 7, 2000, and his troubles began shortly thereafter. On February 7, Beckelman informed Lang that he had only one pending case and that he should be sure to carry his pager with him on the following day in case the Priority 1 team secretary needed to contact him if a mandate needed to be met. Around 2:30 p.m. on February 8, 2000, Beckelman, asked the team secretary to assign a new case, which qualified as an urgent "mandate," to Lang. Lang phoned to say he was on his way into the office, but never returned to the office that day even though his time sheet later indicated that he worked until 4:00 p.m. Because Lang never followed up on the investigation assigned to him, the case had to be reassigned to another investigator. Beckelman grew suspicious of Lang's activity on February 8 because his itinerary showed only a single case visit at 9:00 a.m. and did not reflect his whereabouts after 10:30 a.m. Because of her suspicions, Beckelman issued Lang a memo directing him to submit evidence of his whereabouts on February 8. Another supervisor, Mary Ellen Eads, reported to Child Protection Manager Kathi Glenney that Lang had been "AWOL" most of the day and should receive an unauthorized absence. Eads further reported to Glenney that Lang was purportedly running a personal business during the work day. In an electronic mail to Glenney, Eads wrote that "we need to act quickly on this situation before he backs

up with a lot of pendings as he did before. 2x week formal supervision, constant case reviews, etc. etc."

Beckelman scheduled an investigatory hearing regarding Lang's alleged dereliction of duty on February 8. At the February 15, 2000, investigatory hearing, Lang produced an affidavit signed by clients accounting for his whereabouts, and DCFS decided not issue an unauthorized absence. That same day, Lang filed charges of racial discrimination against DCFS with the Illinois Department of Human Rights. Lang, who is African-American, alleged that his supervisor, Karen Beckelman, paid him less than his white co-workers, refused to pay him overtime despite his working additional hours, and refused to issue the Plaintiff and other African-American employees cellular phones. Lang further alleged that Beckelman "contact(ed) my clients on several occasions to question them about my behavior and my time of arrival." Beckelman, however, did not learn of Lang's filing until March 27.

The events that followed the investigatory hearing reflect a decidedly contentious relationship between the parties. Lang's supervisors carefully and closely monitored his performance and issued blunt, voluminous and critical commentaries of his work. From the period between February 15 and March 24, Beckelman issued at least seven memos to Lang detailing work deficiencies ranging from failure to respond to pages or account for his whereabouts to failure to correct his work product to failure to follow orders. Beckelman also placed Lang on daily supervision and later issued "formal counselings" for failure to follow supervisor directives and complete work in a timely matter. During

4

the same time period, Lang, on the other hand, engaged in a determined effort to justify his conduct.

In March 2000, Lang's attendance worsened. DCFS recorded Lang as having unauthorized absences on March 16 (Thursday). Lang never explained his March 16 absence, and when asked about his absence simply informed a supervisor at the office that he "wasn't here." The following Monday, March 20, 2000, Lang did not report to work and again failed to notify his supervisor of the reasons for his absence. This time Lang was absent from work the entire week, missing five consecutive days of work (March 20-24). Rather than inform his supervisor, Beckelman, that he would be absent, Lang instead chose to leave a voicemail message for Rick Navarro, a Labor Relations Liaison, stating that he had a family emergency and would be out of town for the week. When Lang returned to the office on March 27, Beckelman requested that he write a memo to explain why he failed to inform her of his absence. When Beckelman later asked Lang whether he was going to submit an explanation regarding his absences, he informed her that he would not. Because Lang never informed Beckelman that he would be absent and because he never offered an explanation for his absences, Beckelman recorded Lang's March 20-24 absences as unauthorized. Shortly after the March string of unauthorized absences, DCFS instituted disciplinary proceedings against Lang. On July 13, 2000, DCFS terminated Lang based on the six absences it had classified as unauthorized.

Lang appealed his discharge to the Illinois Civil Service Commission. The hearing officer found that DCFS had proven its charges that Lang had six unauthorized absences

but reduced the discipline to a 90-day suspension. On December 1, 2000, Lang sued DCFS, alleging that his July 13 termination was in retaliation for his filing of the February 15 racial discrimination charges. The Plaintiff later Amended his Complaint, adding a claim for Equal Protection relief under 42 U.S.C. § 1983. On April 29, 2002, this Court granted the Defendant's Rule 12(b)(6) Motion to Dismiss the Amended Complaint. The Plaintiff filed a motion to reconsider, and on July 26, 2002, this Court reaffirmed its dismissal of the Equal Protection claim but withdrew its dismissal of the Title VII retaliatory discharge allegation.

## II. STANDARD OF REVIEW

Summary judgment is proper when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (stating that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.") In considering a motion for summary judgment, courts construe facts in the light most favorable to the non-moving party and draw reasonable inferences in that party's favor. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue of fact "exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole." *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir. 1999).

The party opposing summary judgment bears the burden of bringing forward specific facts showing that a triable issue exists and "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that

there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. The Court is required to grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and which that party will bear the burden at trial." *Tatalovich v. City of Superior*, 904 F.2d 1135, 1139 (7th Cir. 1990).

III. ANALYSIS

Under Title VII of the Civil Rights Act of 1964, employers are forbidden from retaliating against an employee who has accused the employer of a violation of the Act. See 42 U.S.C. § 2000e-3(a); *Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 751 (7th Cir. 2002). The Seventh Circuit has recently made clear that a plaintiff may prove a claim of retaliation either by utilizing the direct method, under which the plaintiff produces evidence (either direct or circumstantial) sufficient to demonstrate a retaliatory intent or by utilizing the indirect burden-shifting method set forth initially in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003) (distinguishing between the direct method and direct evidence); *see also Hilt-Dyson v. City of Chicago*, 282 F.3d 456 (7th Cir. 2002); *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640 (7th Cir. 2002) (adopting a burden-shifting test for proving claims of retaliation).

A. *Direct Method*

Under the direct method, a plaintiff must produce sufficient evidence to demonstrate that the decision maker had retaliatory intent. *Rogers*, 320 F.3d at 754. Under this approach, a plaintiff may rely upon either direct evidence or upon

7

circumstantial evidence. *Id.* Direct evidence of an employer's retaliatory intent usually amounts to an admission made by the decisionmaker. *Id.*; *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000) (stating that direct evidence "essentially requires an admission by the decision-maker that his actions were based on the prohibited animus."); *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 576 (7th Cir. 2001) (noting that this type of admission is highly unusual). A plaintiff may also prove retaliation under the direct method by relying upon circumstantial evidence "that allows a jury to infer intentional discrimination by the decision-maker." *Rogers*, 320 F.3d at 753 (citing *Gorence v. Eagle Food Ctrs., Inc.*, 242 F.2d 759, 762 (7th Cir. 2001)). Whether circumstantial evidence presented by a plaintiff is sufficient to withstand a motion for summary judgment depends upon "its strength in relation to whatever other evidence is in the case." *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994).

Lang spends much of his brief arguing that the suspicious timing of his termination establishes a causal link between his termination and his protected activity of filing a discrimination complaint. The Court is mindful of its obligation to liberally construe a *pro se* plaintiff's pleadings. *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996). In this case the thrust of Lang's argument is clear: the suspicious timing of his firing provides circumstantial evidence that DCFS terminated him in retaliation for engaging in statutorily protected activity. Thus, the Court will examine whether Lang presented sufficient evidence to support a claim under the direct method.

At the outset, the Court notes that a showing of suspicious timing, by itself, is rarely sufficient to create a triable issue on whether the employer retaliated against an

8

employee for engaging in protected activity. *Stone*, 281 F.3d at 644 (collecting cases). In any event, the undisputed facts demonstrate that Lang's argument is without merit. The undisputed evidence demonstrates that DCFS's problems with Lang began on February 8, when his supervisors believed him to be AWOL. Although Lang contests the grounds for Beckelman's and Eads's concerns, he does not contest the fact that both Beckelman and Eads expressed concern regarding his attendance and failure to check in with the office during the work day *before* his February 15 complaint. In an electronic mail regarding the February 8 incident, Eads notes that it was not the first time Lang's attendance and work performance has been an issue. But there is more. Lang insists that the Defendant — DCFS — knew about his charge on February 29. But it was *Beckelman* who documented Lang's work habits, tardiness, and unauthorized absences from February 15 to March 24. Lang does not contest the fact that Beckelman did not learn of his filing of the discrimination charge until March 27—three days *after* Beckelman reported the unauthorized absences that led to DCFS's disciplinary action against him.

The undisputed evidence demonstrates that Lang's supervisors had deep concerns over his work product and attendance prior to the filing of his charge. It further shows that the supervisor most responsible for supervising his day-to-day activities, Beckelman, did not learn of the charge until March 27, several days after the entire series of events that led to the July 13 discipline. Thus, the timing of the discipline is not suspicious at all, and Lang has offered no evidence—direct or circumstantial—to establish an inference that DCFS's disciplinary action was retaliatory.

9

B.   *Indirect Method*

The "indirect method" of establishing a *prima facie* case of retaliation is governed by a four-part test, announced in *Stone*. *Stone*, 281 F.3d at 644. The test adapts the familiar *McDonnell Douglas* burden-shifting discrimination test to the retaliation context. *Id.* at 642; See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *Stone*, a plaintiff must show, 1) that he engaged in a statutorily protected activity; 2) that he performed his job according to his employer's legitimate expectations; 3) that he suffered a materially adverse employment action; and 4) that he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Stone*, 281 F.3d at 644; *see also Rogers*, 320 F.3d at 755. Once a plaintiff has made a prima facie showing, the defendant must come forward with a legitimate non-retaliatory reason for its action. After defendant has done so, the burden returns to the plaintiff to establish that defendant's reason is pretextual. *Stone*, 281 F.3d at 644; *see also Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892 (7th Cir. 2003). DCFS argues that Lang failed to meet his evidentiary burden on two of the four issues: (1) that he met the legitimate expectations of his employers; and (2) that he was treated less favorably than similarly situated employees who had not engaged in statutorily protected activity.

*1.   Legitimate Expectations*

Lang points to his prior positive performance evaluations to demonstrate that he met the legitimate expectations of his employers. It is true that these evaluations which contain praiseworthy assessments of Lang's performance; however, the most recent evaluation is from April 1999, nearly a full year before the unauthorized absences that

led to Lang's discipline. In a similar vein, Lang also points to his score of 105 on the Child Endangerment Risk Assessment Protocol Certification and a 1998 qualifications review, which approved the Plaintiff for a position as a Child Protective Investigator.

Even glowing prior evaluations do not answer the question of how Lang was performing at the time of his termination. *Karazanos v. Navistar Int'l Transp. Co.*, 948 F.2d 332, 333 (7th Cir. 1991). "Whether one is qualified may change from time to time. The fact that an individual may have been qualified in the past does not mean that he is qualified at a later time." *Id.* at 336 (quoting *Weihaupt v. American Med. Ass'n*, 874 F.2d 419, 427 (7th Cir. 1989)). The issue is not the employee's past performance but whether the employee was performing well at the time of the disciplinary action. *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002); *Fortier v. Ameritech Mobile Communications, Inc.*, 161 F.3d 1106, 1113 (7th Cir.1998). In this case, DCFS offers a uniformly negative performance evaluation that considers Lang's string of March absences and other disciplinary problems. According to the review, which covered the period from June 1, 1999, to June 17, 2000, Lang abysmally failed to meet his employer's expectations. The review contains a litany of department objectives that Lang failed to meet. Among the more glaring concerns expressed in the evaluation were: (1) Lang's failure to timely report abuse cases to the police; (2) his failure to attend weekly meetings with supervisors; (3) his failure to investigate and complete the required number of cases per month; (4) his failure to complete investigations in a timely manner; and (5) his failure to complete departmental paperwork correctly. The evaluation states that Lang is unproductive, "needs close supervision," "is difficult to contact," and lacks

an understanding of departmental procedures. The evaluation further reports that the Defendant received complaints from court personnel, families, offenders, and co-workers about Lang's performance. DCFS corroborated its assessment of Lang's performance by submitting a third-party evaluation of Lang's performance given to it by the executive director of the Children's Advocacy Center of Cook County (CAC). In the May 13, 2000, letter, CAC director Mark Parr documents "a number of problems" with Lang's work at the center, including failure to contact families of abused children, failing to obtain accurate information from the family and failing to attend victim-sensitive interviews. The mere fact that Lang disagrees with the evaluations or that he believes the criticism contained within the evaluations was unwarranted does not demonstrate that he was meeting DCFS's legitimate expectations. *Haywood v. Lucent Tech., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003). Lang offers no evidence to rebut the evaluation of his performance by DCFS or the CAC, arguing only that his prior evaluations trump the more recent evaluations. Accordingly, Lang fails to point to any evidence to suggest that he was meeting his employer's legitimate expectations. Instead, the unrebutted performance evaluations, not to mention Lang's pattern of unauthorized absences, demonstrate that Lang was not meeting his employer's legitimate employment expectations.

2.   *Similarly Situated Employees*

Lang argues that the *McDonnell Douglas* burden-shifting formula does not apply, and so fails to argue that a similarly situated employee was treated more favorably. To some extent, Lang is correct—he is not *required* to proceed under the *McDonnell Douglas* framework. As *Rogers* makes clear, plaintiffs pursuing claims for retaliation may proceed

12

under either the direct or indirect method. *Rogers*, 320 F.3d at 753. In other words, although *Rogers* allows Lang two bites at the apple, he has chosen to take but one. But as noted above, Lang's has not produced sufficient evidence to allow him to proceed under the direct method, and so his decision not to argue that similarly situated employees were treated more favorably is costly. DCFS sets forth facts to demonstrate that two employees, whom Lang claims were treated more favorably by Beckelman, were not similarly situated because neither employee had any unauthorized absences, much less five consecutive unauthorized absences. The Defendant's facts on this issue have been deemed admitted by this Court because Lang failed to respond to them. Because Lang makes no effort to establish that similarly situated employees were treated more favorably, he cannot establish a *prima facie* case of retaliation under the indirect, burden-shifting method.

IV. Conclusion

Lang fails to meet the burden of production (under either the direct or indirect method) regarding his claim of retaliation. As noted above, with regard to the direct method, Lang's argument that the suspicious timing of his discipline is without factual support. Further, Lang cannot show either that he met his employer's legitimate expectations or that similarly situated employees were treated more favorably, and so cannot proceed under the indirect-burden-shifting method. Because Lang fails to even establish a *prima facie* case of discrimination, the Court need not examine whether the Defendant's reason for its action was pretextual.

The Defendant's motion for summary judgment is GRANTED. All other pending motions are terminated as moot.

IT IS SO ORDERED.

5/10/03
Date

*[signature]*
The Honorable William J. Hibbler
United States District Court